KEN NAGY (I.S.B. No. 6176)
ATTORNEY AT LAW
P.O. Box 164
Lewiston, Idaho 83501
Telephone: (208) 301-0126
Facsimile: (888) 291-3832
E-mail: knagy@lewiston.com

ATTORNEY FOR PLAINTIFF

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| INTERMOUNTAIN FAIR HOUSING COUNCIL, INC., | ) ) ) | CASE NO. CV 14-363 |
| Plaintiff, | ) ) | VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL |
| vs. | ) ) | |
| NORMAN MANOR APARTMENTS LLC, BRANDON BALES, and TRINA WORTHINGTON, | ) ) ) ) | |
| Defendants. | ) ) | |

COMES NOW the Plaintiff Intermountain Fair Housing Council, Inc. and for a cause of

action against the Defendants Norman Manor Apartments, LLC, Brandon Bales, and Trina

Worthington, states and alleges as follows:

VERIFIED COMPLAINT AND                    1
DEMAND FOR JURY TRIAL

## NATURE OF THE ACTION

1.  This is an action brought by the above-named Plaintiff for declaratory judgment, permanent injunctive relief, and damages on the following bases:

a.  Fair Housing Act, 42 U.S.C. §3601 et seq. (hereinafter "FHA"), and in particular:

i.  Discrimination in the sale or rental, or otherwise made unavailable, a dwelling because of "handicap", 42 U.S.C. §3604;

ii.  Discriminatory terms, conditions or privileges in the sale or rental of a dwelling because of "handicap", 42 U.S.C. §3604;

iii.  Refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a person equal opportunity to use and enjoy a dwelling, 42 U.S.C. §3604(f);

iv.  Making, printing or publishing a notice or statement with respect to the sale or rental of a dwelling that indicates a preference, limitation or discrimination based on "handicap", 42 U.S.C. §3604(c); and

v. Interference, coercion or intimidation, 42 U.S.C. §3617.

b.  Negligence.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over this action pursuant to 42 U.S.C. §3613 and 28 U.S.C. §§1331, 1332, 1337, 1343, 1367 and 2201.  The amount in controversy exceeds $75,000 exclusive of interests and costs.  Venue is proper in this District in that the claims alleged herein arose in the City of Burley, County of Cassia, State of Idaho.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

2

**KEN NAGY**
**Attorney at Law**
**Lewiston, Idaho**

<u>PARTIES</u>

3.  The Plaintiff Intermountain Fair Housing Council, Inc. (hereinafter "the Plaintiff" or "IFHC") is a private, nonprofit organization organized under the laws of the State of Idaho with its principal place of business at 5460 West Franklin Road, Suite M, Boise, Idaho 83705.  Its mission is to advance equal access to housing for all persons without regard to race, color, sex, religion, national origin, familial status, or disability (the term "handicap", as that term is used and defined in the FHA, is used herein interchangeably with the term "disability").  The Plaintiff serves housing consumers through, among other things, housing counseling, education on the fair housing laws and assistance with complaints.

4.  The Defendant Norman Manor Apartments LLC (hereinafter "Defendant Norman Manor"), located at 7 East, 200 North, Richmond, Utah 84333, is listed by the Cassia County, Idaho Assessor's Office as the owner of record of the Norman Manor Apartments located at 1361 Park Avenue, Burley, Idaho 83318 (hereinafter "Subject Property"), the real property that is the subject of this proceeding.  The Subject Property is a covered dwelling subject to the requirements of the FHA, as provided by 42 U.S.C. §3603.  The Defendant Norman Manor is registered in the State of Utah as a Limited Liability Company and its agent of record is Michael Kevin Bales.

5.  The Defendant Brandon Bales (hereinafter "Defendant Bales") is the owner of record of the Defendant Norman Manor.  The address of record for the Defendant Bales is 7 East 200 North, Richmond, Utah 84333.

6.  The Defendant Trina Worthington (hereinafter "Defendant Worthington") is an agent and property manager for Defendant Norman Manor and Defendant Griffith with regards to the

VERIFIED COMPLAINT AND              3
DEMAND FOR JURY TRIAL

Subject Property.  The Defendant Worthington's address of record is 1361 Park Avenue, #A-206, Burley, Idaho 83318.

STANDING OF PLAINTIFF

7.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-6 above.

8.  The Plaintiff has suffered damages as the result of the Defendants' actions and omissions, including the diversion of the Plaintiff's past and future resources, lost economic opportunity, and the frustration of the Plaintiff's mission.

9.  The Plaintiff's mission, as described above, has been frustrated by the Defendants' practices because the Defendants' violations of the FHA communicate to housing consumers and housing providers that discriminatory practices are permissible and that correctional remedies are not available, thereby hampering Plaintiff's efforts to educate the public on fair housing issues and to advance equal access to housing.

10.  The Plaintiff's mission has further been frustrated as the Defendants' violations of the FHA have reduced the pool of non-discriminatory rental housing available to tenants in the State of Idaho.

11.  In order to counteract the frustration of the Plaintiff's mission, the Plaintiff has had to devote significant resources to identify, investigate, document and take action to correct the Defendants' violations of the FHA, including but not limited to the incursion of litigation expenses.  As a result, the Plaintiff has actually diverted resources from other fair housing-related activities, including fair housing education and enforcement activities throughout the State of Idaho and the surrounding region.  Furthermore, the Plaintiff will necessarily incur additional expenses in the future to counteract the lingering effects of the Defendants' violations

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

4

of the FHA through the monitoring of the Defendants' activities, publication and advertising costs, and the sponsorship of educational activities.

12.   As a direct result of the Defendants' actions and omissions as described below, the Plaintiff is an "aggrieved person", as that term is defined by the FHA.  42 U.S.C. §3601(i).  The Plaintiff has suffered and continues to suffer significant and irreparable loss and injury, and has sufficient standing to bring this action before this Court.

<u>GENERAL ALLEGATIONS</u>

13.   The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-12 above.

14.   A.H. is a veteran of the United States armed forces and is handicapped, as that term is defined by the FHA, and requires the assistance of a service animal for her disability (the terms "handicapped" and "disabled" are used interchangeably herein, as well as the terms "handicap" and "disability").

15.   On or about the 27th day of November, 2012, A.H. visited the Subject Property for the purpose of applying for rental housing at the Subject Property.  A.H. contacted the Defendant Worthington regarding the availability of rental housing at the Subject Property and was told by said Defendant that a rental unit was currently available.  A.H. told the Defendant Worthington that she requires the assistance of a service dog as the result of her disability and she had her service dog with her, which is of the breed Chihuahua and which was wearing a bright pink vest on which was clearly written "service dog".  A.H. further told the Defendant Worthington that she also has another Chihuahua dog, which is the father of her service dog.

16.   The Defendant Worthington told A.H. that the Defendants charge an extra $25.00 monthly fee for each animal.  A.H. asserted her fair housing rights, told the Defendant

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

5

Worthington that she could not be charged a fee for her service animal, and that she would agree to pay the fee for the other dog, which is not a service animal.  Additionally, A.H. offered a copy of the fair housing regulations to said Defendant.  The Defendant Worthington told A.H. that they have other tenants with service animals and that they are all charged an extra fee to keep those animals.  The Defendant Worthington further stated that she would discuss the matter with the owners.

17.   A.H. submitted her application for the available rental unit, viewed the unit and told the Defendant Worthington that she would like to rent the unit starting the 28th day of November, 2014.  The Defendant Worthington told A.H. that once she paid a background check fee, she would submit A.H.'s application to the owners and let A.H. know their decision within two to four hours.

18.  On or about the 28th day of November, 2012, A.H. returned to the Subject Property at approximately 12:00 p.m. and paid a background check fee to the Defendant Worthington.  The Defendant Worthington again told A.H. that she would submit A.H.'s application to the owners and let A.H. know their decision within two to four hours.

19.  A.H. did not receive a call back from the Defendant Worthington.  Therefore, A.H. called the Defendant Worthington in the early evening on or about the 28th day of November, 2012 to find out whether her application had been approved by the owners.  The Defendant Worthington told A.H. that she would call her in the morning of the next day to let her know the owners' decision.

20.  A.H. did not receive a call back from the Defendant Worthington.  Therefore, A.H. placed telephone calls to the Defendant Worthington throughout the day on or about the 29th day of November, 2012 to find out whether her application had been approved by the owners.  The

KEN NAGY
Attorney at Law
Lewiston, Idaho

Defendant Worthington did not answer the telephone and A.H. left messages inquiring as to the status of her application.

21. On or about the 1st day of December, 2012, A.H. again placed calls to the Defendant Worthington regarding the status of her application for housing. The Defendant finally answered the telephone at approximately 11:30 a.m. and told A.H. that her application for housing had been denied by the owners. When A.H. asked for an explanation, the Defendant Worthington hung up the telephone.

22. The Defendants' conduct with regards to A.H.'s application for housing violates the FHA and constitutes negligent training or supervision by the Defendant Norman Manor and the Defendant Bales.

23. As a result of the Defendants' discriminatory and negligent conduct, A.H. was unable to obtain the housing of her choice and experienced extreme stress, embarrassment and inconvenience. A.H. has had to turn to the Veterans of Foreign Wars and to the American Legion for assistance, and has been forced to rely on a fellow veteran for temporary housing until she is able to obtain permanent housing.

24. On or about the 13th day of December, 2012, A.H. filed a complaint with the Plaintiff regarding the discriminatory and negligent treatment to which she was subjected by the Defendants. The Plaintiff counseled A.H. with regards to her fair housing rights and began investigating her allegations and the Defendants' rental practices.

25. As part of its investigation, the Plaintiff conducted two telephonic tests of the Defendants.

26. On or about the 18th day of December, 2012, the Plaintiff conducted its first test of the Defendants. During the course of the first test, the Plaintiff's tester inquired of the Defendant

**VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL**

7

Worthington as to the availability of housing at the Subject Property and the terms of the rental. The Defendant Worthington told the Plaintiff's tester that the Defendants have a one-bedroom apartment coming available in January 2013, that the rent is $425.00 per month for the apartment, and that the deposit is also $425.00.  The Plaintiff's tester stated that his wife has a service animal and the Defendant Worthington told the Plaintiff's tester that the Defendants charge a monthly $25.00 fee for pets.  The Plaintiff's tester told the Defendant Worthington that the animal is a service animal and not a pet, and that his wife has a prescription for the animal. The Defendant Worthington told the Plaintiff's tester that other tenants at the Subject Property have prescriptions for service animals and that they also pay the extra fee.  The Plaintiff's tester asked the Defendant Worthington if the Defendants would waive the fee and the Defendant Worthington stated that they would not waive the fee.  The Plaintiff's tester asked if they do not waive the fee even if the person with the service animal has a prescription for the animal, and the Defendant Worthington said that they do not waive the fee even if there is a prescription.  Such conduct violates the FHA and constitutes negligent training or supervision by the Defendant Norman Manor and the Defendant Bales.

27.  On or about the 3rd day of April, 2013, the Plaintiff conducted its second test of the Defendants.  During the course of the second test, the Plaintiff's tester inquired of the Defendant Worthington as to the availability of housing at the Subject Property and the terms of the rental. The Defendant Worthington told the Plaintiff's tester that the Defendants have an apartment currently available, that the rent is $475.00 per month for the apartment, and that the deposit is also $475.00.  The Plaintiff's tester stated that she has a service animal prescribed by her doctor for her disabilities.  The Defendant Worthington told the Plaintiff's tester that the Defendants charge a monthly $50.00 fee for pets and that she would have to discuss with the owners whether

VERIFIED COMPLAINT AND                     8
DEMAND FOR JURY TRIAL

they will agree to rent to her with the animal.  The Defendant Worthington called the Plaintiff's

tester back later that day and told her that the owners would accept the animal.  The Plaintiff's

tester inquired with regards to the imposition of the pet deposit and asked if there are any

exceptions to the fee.  The Defendant Worthington told the Plaintiff's tester that there are no

exceptions.  The Plaintiff's tester asked the Defendant Worthington if the Defendants would

waive the fee since the animal is a service animal prescribed by her doctor for her disabilities.

The Defendant Worthington told the Plaintiff's tester that other tenants at the Subject Property

have prescriptions for service animals and that they also pay the extra fee.  Such conduct violates

the FHA and constitutes negligent training or supervision by the Defendant Norman Manor and

the Defendant Bales.

28.  As the result of the Defendants' discriminatory and negligent conduct, the Plaintiff

has diverted its resources, it lost economic opportunity, and its mission has been frustrated.

29.  As the result of the Defendants' discriminatory and negligent conduct, A.H. has

suffered out-of-pocket expenses, embarrassment, humiliation, deprivation of her civil rights, pain

and suffering, inconvenience, and emotional and physical suffering.

<u>COUNT ONE—DISCRIMINATION ON THE BASIS OF "HANDICAP" IN VIOLATION OF
THE FAIR HOUSING ACT AND ITS IMPLEMENTING REGULATIONS</u>

30.  The Plaintiff realleges and herein incorporates by reference the allegations set forth

in Paragraphs 1-29 above.

31.  The Defendants have discriminated in the sale or rental of, and otherwise made

unavailable and denied, a dwelling on the basis of "handicap".  42 U.S.C. §3604(f)(1).

32. The Defendants have discriminated in the terms, conditions and privileges of the sale or rental of a dwelling, and the services and facilities in connection therewith, on the basis of "handicap". 42 U.S.C. §3604(f)(2).

33. The Defendants have refused to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford equal opportunity to use and enjoy a dwelling. 42 U.S.C. §3604(f)(3)(B).

34. The Defendants made, printed or published a notice or statement with respect to the sale or rental of a dwelling that indicates a preference, limitation or discrimination based on "handicap". 42 U.S.C. §3604(c).

35. Such conduct is willful and intentional, and exhibits reckless or callous indifference for the rights of the victims.

## COUNT TWO—INTERFERENCE, COERCION OR INTIMIDATION IN VIOLATION OF THE FAIR HOUSING ACT AND ITS IMPLEMENTING REGULATIONS

36. The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-35 above.

37. The Defendants have engaged in interference in the exercise or enjoyment of rights granted the victims by 42 U.S.C. §§3603 and 3604. 42 U.S.C. §3617.

38. Such conduct is willful and intentional, and exhibits reckless or callous indifference for the rights of the victims.

## COUNT THREE—NEGLIGENCE

39. The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-38 above.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

10

**KEN NAGY**
**Attorney at Law**
**Lewiston, Idaho**

40.  The Defendants owed a duty of care to use reasonable care to avoid injury and to prevent unreasonable, foreseeable risks of harm to the Plaintiff and to A.H.

41.  It could have been reasonably anticipated or foreseen by the Defendants that their failure to use reasonable care might result in injury to the Plaintiff and to A.H.

42.  The Defendants were negligent in that they failed to use reasonable care to avoid injury and to prevent unreasonable, foreseeable risks of harm to the Plaintiff and to A.H. by failing to adequately train and supervise its agents and employees with regards to the requirements of the Fair Housing Act, 42 U.S.C. §3601 et seq. and its implementing regulations.

<u>DAMAGES</u>

43.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-42 above.

44.  As the result of the actions and conduct of the Defendants, as described above, the Plaintiff has suffered significant and irreparable loss and injury.

45.  The Plaintiff is an "aggrieved person[s]", as defined in 42 U.S.C. §3601(i), and is an intended beneficiary of the protections and requirements of the statutes, laws and regulations referenced above.

46.  The Plaintiff has suffered actual damages as a result of its out-of-pocket expenses and past diversion of its resources, as described above and in the attached "Appendix A", in the amount of $20,397.74, which continue to accrue.

47.  The Plaintiff has suffered actual damages as a result of the necessary future diversion of its resources, as described above and in the attached "Appendix A", in the amount of $32,175.24.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

**KEN NAGY**
**Attorney at Law**
**Lewiston, Idaho**

48. The Plaintiff has suffered actual damages as a result of lost economic opportunity, as described above and in the attached "Appendix A", in the amount of $1,000.00.

49. The Plaintiff has suffered actual damages as a result of the frustration of its mission, as described above and in the attached "Appendix A", in the amount of $46,754.49.

50. In addition to the injuries suffered by the Plaintiff, the Defendants have also caused significant and irreparable loss and injury to a number of identified and as-of-yet unidentified persons, including but not limited to A.H.

51. The Plaintiff and the above-named victim are "aggrieved person[s]", as defined in 42 U.S.C. §3601(i), and are intended beneficiaries of the protections and requirements of the statutes, laws and regulations referenced above.

52. All victims of the Defendants' actions and conduct should be identified and compensated through a Victims' Compensation Fund.

53. A Victims' Compensation Fund should be established in an amount to be determined at trial to adequately compensate identified and as-of-yet unidentified victims of the Defendants' discriminatory conduct, as described in the attached "Appendix B", from which such victims should be compensated. Said Victims' Compensation Fund should be established and administered as follows:

      a. The Plaintiff shall be assigned the task of managing and administering the Victims' Compensation Fund. The Plaintiff shall be compensated for all time spent administering said Fund at the rate of $18.06 per hour. The Plaintiff shall keep detailed records of all tasks engaged in and shall submit copies of said records to the Court and the Defendants on a monthly basis.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

12

b.   Within thirty (30) days of the entry of an order by this Court creating a

Victims' Compensation Fund, the Defendants shall deposit in an interest-

bearing escrow account the total sum as determined by applying the calculation

set forth in the attached Appendix B.

c.   Any interest accruing to such Victims' Compensation Fund shall become a part

of the fund and be utilized as set forth herein.

d.   Within fifteen (15) days after the Defendants deposit funds in the Victims'

Compensation Fund, the Plaintiff shall publish a Notice to Potential Victims of

Housing Discrimination (hereinafter "Notice") in at least five daily newspapers

serving the main population centers of the State of Idaho informing readers of

the availability of compensatory funds.  The form and content of the Notice

shall be approved by the Court at the time of the entry of the Court's order

establishing the Victims' Compensation Fund.  The Notice shall be no smaller

than three columns by six inches and shall be published on three occasions in

each newspaper.  The publication dates shall be separated from one another by

at least 21 days, and at least two of the publication dates shall be a Sunday.

The Plaintiff shall send a copy of the Notice prior to each and every

publication date to each of the following organizations: (1) Living Independent

Network Corp. (LINC), 1878 Overland Road, Boise, Idaho 83705; (2)

DisAbility Rights Idaho, 4477 Emerald Street, Suite B-100, Boise, Idaho

83706; Disability Action Center, 505 North Main Street, Moscow, Idaho

83843; and (3) Living Independently for Everyone (LIFE), P.O. Box 4185, 640

Pershing Avenue, Suite 7, Pocatello, Idaho 83201.

VERIFIED COMPLAINT AND                    13
DEMAND FOR JURY TRIAL

e.   Within thirty (30) days of the entry of an order by this Court creating a Victims' Compensation Fund, the Plaintiff shall send by first-class mail, postage prepaid, a copy of the Notice to each tenant who currently resides or who resided at any time at the subject property.

f.   Nothing in this section shall preclude the Plaintiff from making its own additional efforts at its own expense to locate and provide notice to potentially aggrieved persons.

g.   Allegedly aggrieved persons shall have one hundred-twenty (120) days from the date of the entry of an order by this Court creating a Victims' Compensation Fund to contact the Plaintiff in response to the Notice.  The Plaintiff shall investigate the claims of allegedly aggrieved persons and, within one hundred-eighty (180) days from the entry of an order by this Court creating a Victims' Compensation Fund, shall make a preliminary determination of which persons are aggrieved and an appropriate amount of damages that should be paid to each such persons.  The Plaintiff will inform the Defendants in writing of its preliminary determinations, together with a copy of a sworn declaration from each aggrieved person setting forth the factual basis of the claim.  The Defendants shall have fourteen (14) days to review the declaration and to provide to the Plaintiff any documents or information that it believes may refute the claim.

h.   After receiving the Defendants' refutation, if any, the Plaintiff shall submit its final recommendations to the Court for approval, together with a copy of the declarations and any additional information submitted by the Defendants.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

14

When the Court issues an order approving or changing the Plaintiff's proposed distribution of funds for aggrieved persons, the Defendants shall, within ten (10) days of the Court's order, deliver to the Plaintiff checks payable to the aggrieved persons in the amounts approved by the Court. In no event shall the aggregate of all such checks exceed the sum of the Victims' Compensation Fund, including accrued interest and after deducting compensation to the Plaintiff as described above. No aggrieved persons shall be paid until he or she has executed and delivered to counsel for the Plaintiff a signed and notarized statement releasing the Defendants from all claims related to the subject property.

i.   In the event that less than the total amount in the fund including interest is distributed to aggrieved persons, the remaining funds shall be submitted to an education fund to be drawn upon by the Plaintiff and other non-profit organizations for purposes of educating housing consumers and providers on the requirements of the Fair Housing Act. Said education fund shall be administered by the Plaintiff.

j.   The Defendants shall permit the Plaintiff, upon reasonable notice, to review any records that may facilitate its determinations regarding the claims of allegedly aggrieved persons.

54.  The Court should award to the Plaintiff and against the Defendants punitive damages due to the intentional and willful nature of the Defendants' conduct in an amount to be determined at trial.

VERIFIED COMPLAINT AND          15
DEMAND FOR JURY TRIAL
                                                    **KEN NAGY**
                                                 **Attorney at Law**
                                                 **Lewiston, Idaho**

55.  The Court should enjoin the Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with said Defendants, from failing or refusing to comply with all requirements of the FHA and its implementing regulations.

56.  The Court should award to the Plaintiff and against the Defendants reasonable attorney's fees and costs incurred in this action, as provided for by the FHA and court rule.

57.  The Defendants should be held jointly and severally liable for any and all damages, including an award of attorney's fees and costs, awarded in this proceeding.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, the Plaintiff Intermountain Fair Housing Council, Inc. prays that the Court enter judgment against the Defendants as follows:

A.  That the Court find and declare that the actions of the Defendants constitute violations of the Fair Housing Act;

B.  That the Court award to the Plaintiff and against the Defendants actual damages in compensation for its out-of-pocket expenses and past diversion of resources in the amount of $20,397.74, which continue to accrue;

C.  That the Court award to the Plaintiff and against the Defendants actual damages in compensation for the necessary future diversion of the Plaintiff's resources in the amount of $32,175.24;

D.  That the Court award to the Plaintiff and against the Defendants actual damages in compensation for the Plaintiff's lost economic opportunity in the amount of $1,000.00;

E.  That the Court award to the Plaintiff and against the Defendants actual damages in compensation for the frustration of the Plaintiff's mission in the amount of $46,754.49;

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

16

F.  That the Court enter an order establishing a Victims' Compensation Fund an amount to be determined at trial by applying the calculation set forth in the attached Appendix B and to be administered according to the terms set forth in Paragraph 53 above;

G.  That the Court award to the Plaintiff and against the Defendants punitive damages due to the reckless or callous nature of the Defendant's conduct in an amount to be determined at trial;

H.  That the Court enjoin the Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with said Defendants, from failing or refusing to comply with all requirements of the FHA and its implementing regulations;

I.  That the Court award to the Plaintiff and against the Defendants reasonable attorney's fees and costs incurred in this action;

J.  That the Defendants be held jointly and severally liable for any and all damages, including an award of attorneys fees and costs, awarded in this proceeding; and

K.  That the Court order any further and additional relief as the interests of justice may require.

<u>JURY DEMAND</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiff demands a trial by jury on all issues.

DATED this ___29th___ day of _____August_____, 2014.

_____
KEN NAGY
Attorney for Plaintiff

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

17

**KEN NAGY
Attorney at Law
Lewiston, Idaho**

ZOE ANN OLSON, being first duly sworn on her oath, deposes and says:

I am the Executive Director of the Intermountain Fair Housing Council, Inc., the Plaintiff herein, that I have read the foregoing document, know well the contents thereof, and that the facts therein stated are true to the best of my knowledge and belief.

/s/
_____
ZOE ANN OLSON


STATE OF I D A H O   )
                     : ss
County of __ADA__    )

I, ___Carrie House_____, a Notary Public for said state, does hereby certify that on the __22__ day of _____Aug_____, 2014, personally appeared before me ZOE ANN OLSON, Executive Director of the Intermountain Fair Housing Council, Inc. who, being by me first duly sworn, declared that he signed the foregoing document as such, and that the statements therein contained are true and accurate as she verily believes.

SEAL
 Carrie House
 Notary Public
 State of Idaho

/s/ (Carrie House)
_____
Notary Public in and for the State of __IDAHO___
Residing at: __Boise_____
My commission expires: __3/1/2019_____

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

18

## APPENDIX A:

## PLAINTIFF IFHC'S MEMORANDUM OF DAMAGES

The Plaintiff IFHC has identified four categories of damages that it has suffered as the result of the Defendants' failure to comply with the FHA.  These categories are: (1) Past Diversion of Resources; (2) Future Diversion of Resources; (3) Lost Economic Opportunity; and (4) Frustration of Mission.  Each of these categories of damages have been recognized and awarded by various courts to organizational plaintiffs in previous fair housing cases.[1]

The following represents an itemization of the Plaintiff IFHC's damages:

### 1.  Out-of-Pocket Expenses and Past Diversion of Resources

The Plaintiff IFHC has incurred significant pre-litigation expenses as a result of the Defendants' discriminatory actions, which are constituted by its out-of-pocket expenses and its past diversion of resources.  The Plaintiff IFHC has sponsored training workshops in the Defendants' geographic area, and has engaged in site monitoring, investigation, complaint

---

[1] *See, Southern Cal. Housing Rights Center v. Krug*, 564 F.Supp.2d 1138 (Cent. Dist. Cal. 2007) (fair housing organization awarded $6,590.80 for diversion of resources and $29,065.32 for frustration of mission), *Fair Housing of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002) (fair housing organization awarded $14,217.00 for the diversion of resources); *HUD v. Perland*, Fair Housing-Fair Lending Rptr. ¶25,136 (HUD ALJ 1998) (fair housing organization awarded $4,516 for the diversion of resources and $1,400 for the costs of future monitoring of the defendants); *Ragin v. Harry Macklowe Real Estate Co.*, 801 F.Supp. 1213, *aff'd in pertinent part*, 908 F.3d 898 (2nd Cir. 1993) (fair housing organization awarded $20,000 for the diversion of resources); *HUD v. Jancik*, Fair Housing-Fair Lending Rptr. ¶25,058 (HUD ALJ 1993) (fair housing organization awarded $13,386 for the diversion of past and future resources and $9,000 for the financial opportunity lost as a result of the investigation and litigation of the case); *City of Chicago v. Matchmaker Real Estate Sales Center, Inc.*, 982 F.2d 1086 (7th Cir. 1992) (fair housing organization awarded $16,500 for out-of-pocket expenses and costs of future monitoring and training); *Saunders v. General Services Corp.*, 659 F.Supp. 1042 (E.D. Va. 1987) (fair housing organization awarded $2,300 for the diversion of resources and $10,000 for the frustration of its equal housing mission).

preparation, counseling and other activities with regards to this matter.  As a result of these activities, it has incurred expenses as follows:

    a.  Counseling Costs:                                 $55.56

    b.  Investigation Costs:                           $5,762.93

    c.  Educational Efforts:                           $5,420.51

    d.  <u>Cost of Deferred Actions:                                $9,158.74</u>

                      Total Past Diversion of Resources:  $20,397.74

Further litigation of these matters will result in an increase in the Plaintiff IFHC's diversion of resources, as well as other damages.

**2.  Future Diversion of Resources**

The Plaintiff IFHC has an affirmative duty to ensure the Defendants' ongoing compliance with the FHA, with regards to both the subject property as well as any future developments in which the Defendants may participate.  Such monitoring activities include site visits, training of Defendants and their employees and agents, counseling of victims, and testing.

The Plaintiff IFHC expects to incur the following expenses as a result of the current violations:

    a.  Future Advertising Costs:                     $6,300.00

    b.  Cost of Future Training:                       $15,699.30

    c. <u>Costs of Future Monitoring/Testing:                $10,175.94</u>

                   Total Future Diversion of Resources:  $32,175.24

**3.  Lost Economic Opportunity**

Vigorous investigation and enforcement of fair housing complaints, including the property at issue herein, has caused the Plaintiff IFHC to divert limited resources and manpower

VERIFIED COMPLAINT AND         20
DEMAND FOR JURY TRIAL

away from grant-writing activities.  The Plaintiff IFHC could reasonably expect to have obtained funding to sponsor fair housing training events in the amount of $1,000.00 if it had not been so diverted due to the Defendants' actions

    a.  Loss of Funding:                                        $1,000.00

**4.  Frustration of Mission**

The investigation of the subject of this complaint, the counseling and training provided to the community, and the preparation of the administrative complaint have caused the Plaintiff IFHC to divert significant resources toward this proceeding and has undermined the work of furthering fair housing in the state of Idaho.

As a direct result of the Defendants' discriminatory actions, the Plaintiff IFHC's mission of furthering fair housing has been significantly frustrated, and the Plaintiff IFHC has had to devote, and will continue to devote, additional resources in order to counteract the past and ongoing effects of this discrimination.

Furthermore, the property at issue in this proceeding has constituted a formidable barrier to non-discriminatory housing, thereby undermining the mission of the Plaintiff IFHC in guaranteeing fair housing to all residents of the state.  The Plaintiff IFHC has determined that it will be necessary to educate housing consumers regarding fair housing requirements in order to counteract the effects of the Defendants' failure to comply with the FHA.

The Plaintiff IFHC measures the damage to its frustration as the total monetary damages that the Defendants' actions have cost to correct, including lost funding opportunities.

    a.  Frustration of Mission                              $46,754.49

## **TOTAL DAMAGES**

The Plaintiff IFHC calculates its total damages in this proceeding as follows:

1.  Out-of Pocket Expenses and Past Diversion of Resources:     $20,397.74

2.  Future Diversion of Resources:     $32,175.24

3.   Lost Economic Opportunity:     $1,000.00

4.   Frustration of Mission:     $46,754.49

Total Damages:     $100,327.04

VERIFIED COMPLAINT AND          22
DEMAND FOR JURY TRIAL

**APPENDIX B:**

**CALCULATION OF VICTIMS' COMPENSATION FUND**

## I.  INTRODUCTION

In addition to the damages incurred by the Plaintiffs, a number identified and of as-of-yet unidentified victims have also suffered damages as the result of the Defendants' discriminatory actions.  In furtherance of the Plaintiff IFHC's mission, a Victims' Compensation Fund should be created in order to identify and obtain adequate compensation for such victims.

The Federal District Court for the District of Idaho has frequently ordered the establishment of a Victims' Compensation Fund in previous actions brought pursuant to the Fair Housing Act.  *See, United States of America and Intermountain Fair Housing Council v. Stealth Investment, LLC, et al.*, Case No. CV 07-500-E-EJL (Consent Decree entered May 29, 2008 establishing Victims' Compensation Fund in the amount of $12,500.00); *United States of America v. Taigen & Sons, Inc., et al.*, Case No. CV 01-337-N-EJL (Consent Order entered July 18, 2006 establishing Victims' Compensation Fund in the amount of $55,000.00); *United States of America v. Thomas Development Co., et al.*, Case No. CV 02-68-C-EJL (Consent Order entered March 11, 2005 establishing Victims' Compensation Fund in the amount of $100,000.00); *United States of America v. S-Sixteen Ltd. Partnership*, Case No. CV 03-154-S-BLW (Consent Order entered March 14, 2005 establishing Victims' Compensation Fund in the amount of $40,000.00); *United States of America v. Pacific Northwest Electric, Inc., et al.*, Case No. Civil No. 01-19-S-BLW (Consent Decree entered October 21, 2003 establishing Victims' Compensation Fund in the amount of $29,000.00); *United States of America v. Virginia L. Vanderpool, et al.*, Case No. CIV 01-78-S-BLW (Consent Order entered April 27, 2002

VERIFIED COMPLAINT AND                    23
DEMAND FOR JURY TRIAL

establishing Victims' Compensation Fund in the amount of $30,000.00); *United States of America, et al., v. Duane B. Hagadone, et al.*, Case No. CV 97-603-N-RHW (Consent Order entered July 6, 1999 establishing Victims' Compensation Fund in the amount of $30,000.00).

Said orders, however, do not contain a description of how the amount of such a fund was calculated.  The Victims' Compensation Fund that should be ordered herein should be calculated according to the underlying principles and using the applicable figures set forth below.

## II.  UNDERLYING PRINCIPLES

A.  The number of units that are owned and managed by the Defendants is currently unknown.

B.  The number of months that the Defendants have managed property that is subject to the requirements of the Fair Housing Act, as of the filing of this complaint, is currently unknown.

C.  On average, each of the units could be expected to be rented to a new tenant who is disabled every twelve months.

D.  The U.S. Census Bureau Population Survey of 2000 indicates that, for the state of Idaho, persons (age 5+) with a disability comprised 13.0% of the population.

E.  The amount of damages awarded to victims of disability discrimination in violation of the Fair Housing Act in administrative proceedings before the United States Department of Housing and Urban Development has been $10,000.00 or more (this is a conservative estimate of the amount of damages that should be awarded to a victim of such discrimination, and is therefore not intended in any way to be a statement of the damages that are reasonably owing to individual victims, which instead must be determined on a case by case basis with full consideration of the facts of each such case).

VERIFIED COMPLAINT AND                    24
DEMAND FOR JURY TRIAL

F.  The Plaintiff IFHC is the organization best equipped and situated to administer the fund.

G.  The Plaintiff IFHC should be compensated at its hourly overhead rate of $18.06 per hour in the administration of the fund.

H.  The number of hours that it will take to administer the fund and complete compensation of victims can reasonably be expected to be three hours per identified victim.

I.  Administration of the fund will result in the incursion of out-of-pocket expenses, such as advertising and travel costs, in the amount of at least $100.00 per identified victim.

### III.  CALCULATION OF AMOUNT OF VICTIMS' COMPENSATION FUND

The total amount of the Victims' Compensation Fund should be calculated as follows:

a.  <u>Step One.</u>  The amount of funds that can reasonably be expected to be necessary to compensate identified victims should be calculated as follows: the total number of units at the subject property **<u>times</u>** the total number of months that said units have been subjected to the FHA **<u>divided by</u>** twelve (to determine the number of prospective renters who have encountered discrimination at the subject property) **<u>times</u>** $10,000.00.

b.  <u>Step Two.</u>  The amount of funds that can reasonably be expected to be necessary incurred by the fund administrator for work performed in administering the fund should be calculated as follows: the total number of units at the subject property **<u>times</u>** the total number of months that said units have been subjected to the FHA **<u>divided by</u>** twelve (to determine the number of prospective renters who have encountered discrimination at the subject property) **<u>times</u>** three (hours necessary to administer fund per victim) **<u>times</u>** $18.06.

c.  <u>Step Three.</u>  The amount of funds that can reasonably be expected to be necessarily incurred by the fund administrator for out-of-pocket expenses in administering the fund should

VERIFIED COMPLAINT AND                    25
DEMAND FOR JURY TRIAL

be calculated as follows: the total number of units at the subject property **times** the total number of months that said units have been subjected to the FHA **divided by** twelve (to determine the number of prospective renters who have encountered discrimination at the subject property) **times** $100.00.

    d.  <u>Step Four.</u>  The total amount of the Victims' Compensation Fund is the amount determined by adding the results of Step One, Step Two and Step Three.

The formula described above can be expressed as follows:

$$\frac{(\text{number of units } \mathbf{X} \text{ number of months rented})}{12} \mathbf{X} \ \$10,000.00$$

$$+ \ \frac{(\text{number of units } \mathbf{X} \text{ number of months rented})}{12} \mathbf{X} \ 3 \ \mathbf{X} \ \$18.06$$

$$+ \ \frac{(\text{number of units } \mathbf{X} \text{ number of months rented})}{12} \mathbf{X} \ \$100.00 = \text{amount of fund}$$

**3.  Calculation of Victims' Compensation Fund**

Applying the underlying principles, as described above, and the applicable figures, as set forth above, the victims' compensation fund should be established in an amount to be determined at trial once the number of units at the Subject Property and the number of months said units have been rented is determined in order to compensate identified victims.

VERIFIED COMPLAINT AND          26
DEMAND FOR JURY TRIAL